IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC,  )<br>  )<br> Plaintiff,  )<br>  )<br>v.   )<br>  )<br>4.72 ACRES OF LAND, OWNED BY  )<br>FRED W. VEST,  )<br>  )<br> Defendant.  ) | Civil Action No. 7:18-cv-00647<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Before the court are the following motions: (1) defendant's emergency motion to prevent or restrict Mountain Valley Pipeline's (MVP) use of temporary road access (Dkt. No. 59),[1] and (2) defendant's motion to stop MVP's work on the pipeline project pending the court's resolution of the first motion. (Dkt. No. 60.) The court held a hearing on these motions on January 15, 2021. (Dkt. No. 63.) At the hearing, the court indicated that it would deny defendant's motion to prevent or restrict temporary road access and deny as moot defendant's motion to stop work. The court also stated that it would issue a written opinion, which is set forth herein.[2]

I.  BACKGROUND

On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued an order granting a Certificate of Public Convenience and Necessity to MVP for the construction, operation, and maintenance of an interstate gas pipeline across properties in the counties of Giles, Craig, Montgomery, Roanoke, Franklin, and Pittsylvania, Virginia, owned by several landowners, including defendant Fred W. Vest. (Compl. ¶ 1, Ex. 1, Dkt. No. 1, Case No. 7:17-cv-00492.) MVP

---

[1] Unless otherwise noted, docket references are to Case No. 7:18-cv-00647.

[2] After the hearing, defendant submitted a motion to supplement and clarify the record. (Dkt. No. 64.) The court will grant this motion and has considered the submission, but nothing in the motion, or the many submissions thereafter, alters the court's analysis and conclusion that defendant's motion to prevent or restrict MVP's temporary road access must be denied.

then filed a lawsuit, *MVP v. Easements*, Case No. 7:17-cv-00492 (W.D. Va.), pursuant to its power of eminent domain as authorized by the Natural Gas Act (NGA), to condemn property interests necessary to construct the pipeline.

On January 31, 2018, the court entered a memorandum opinion and order granting MVP's motion for partial summary judgment and conditionally granting MVP's motion for an immediate stay. (Dkt. Nos. 339, 340, Case No. 7:17-cv-00492.) With respect to Vest's property, MVP acquired a temporary access easement (1.19 acres), a temporary workspace (1.87 acres), and a permanent easement (1.66 acres). (Compl. ¶ 136, Ex. 132, Case No. 7:17-cv-00492.) The court has also granted MVP an easement to use the driveway shared by Vest's property (MVP-VA-RO056) and property owned by Robert and Aimee Hamm (VA-RO-5748) as an access road. (Vest Statement ¶ 4, Dkt. No. 59-1; Dkt. No. 3-166, Case No. 7:17-cv-00492 (Notice of Condemnation describing 0.15 temporary access easement on MVP Parcel No. VA-RO-5748).) The rights and privileges applicable to the various easements provide that landowners "may fully use and enjoy the premises to the extent that such use and enjoyment does not interfere with or obstruct MVP's rights described herein." (*See* Dkt. No. 598, Case No. 7:17-cv-00492 (Order Granting Immediate Possession of MVP Parcel No. VA-RO-056).) The court's ruling was affirmed on appeal by the Fourth Circuit Court of Appeals. *MVP v. 6.56 Acres*, 915 F.3d 197 (4th Cir. 2019). The Supreme Court denied certiorari. *Givens v. MVP*, 140 S. Ct. 300 (2019).

Precision Pipeline LLC, contractor for MVP, is preparing an access road across the Vest property. (Declaration of Abraham C. Jones (Jones Decl.) ¶ 2, Dkt. No. 62-1.) The improvements are designed to facilitate the movement of equipment and supplies to the right of way for construction of the pipeline. (*Id.*) All work being performed on Vest's property is within the route

that was approved by FERC and in accordance with the terms and conditions of FERC's orders for the project. (*Id.* ¶ 3.)

In these motions, Mr. Vest expresses "overwhelming fear, concern and anxiety" for his wellbeing, given his significant health issues, and the wellbeing of his family regarding (1) the presence of MVP adult male coworkers, most of whom are from out of state in the midst of a global pandemic, in close contact with his granddaughters; (2) close and frequent passage of large company pickup trucks; and (3) close passage of large earth moving machinery used for tree clearing, grading, trenching, and laying pipe. (Vest Statement ¶ 12.)

With these concerns in mind, Vest is requesting an order that directs MVP's "avoidance of my family road, and recognizing MVP's present and continuing use of two other available entry points at Mileposts 243.5 (Bottom Creek Road workspace) and at Milepost 246 (Bent Mountain/Montouri Road)." (*Id.* ¶ 18.) In his motion papers, Vest explicitly requested that the court "prevent MVP from using his Access Road and to construct the pipeline on his property by using the Access points along the ROW [right of way] *as they are constructed* on both sides of his farm." (Dkt. No. 59 at 7 (emphasis in original).) When pressed at the hearing, however, counsel indicated that Vest does not seek to amend the FERC certificate and eliminate MVP's easement. Instead, Vest focused on his request for alternative relief: that the court require MVP to give reasonable notice to Vest regarding the scope of work before entering the access road and to impose mutually agreeable time and date restrictions on when MVP may enter the access road.

## II.  ANALYSIS

Vest seeks relief pursuant to the All Writs Act, which empowers a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act enables a federal court to "issue such commands

3

. . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *In re Am. Honda Motor Co., Inc.*, 315 F.3d 417, 437 (4th Cir. 2003) (quoting *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985)). The "power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice . . . and encompasses even those who have not taken any affirmative action to hinder justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977) (citations omitted). The Act is a "residual source of authority to issue writs that are not otherwise covered by statute." *Pa. Bureau of Corr.*, 474 U.S. at 43. "Where a statute specifically addresses the particular issue at hand, it is that authority, not the All Writs Act, that is controlling." *Id.* Ultimately, the authority to grant relief under the All Writs Act is to be "used sparingly and only in the most critical and exigent circumstances." *Wis. Right to Life v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers).

Courts analyze various elements when determining whether to invoke the All Writs Act, including whether any applicable federal law governs the request, whether there is any constitutional issue that is implicated, whether a prior order of the court exists that a further order will aid, and whether exceptional circumstances justify invocation of the All Writs Act. *In re Application for Order Authorizing Disclosure*, 849 F. Supp. 2d 526, 580–81 (D. Md. 2011); *see also In re Apple, Inc.*, 149 F. Supp. 3d 341, 350 (E.D.N.Y. 2016) (explaining that the "plain text" of the statute confers authority to issue orders when issuance is "in aid of" the issuing court's jurisdiction, the type of writ must be "necessary or appropriate" to provide such aid, and the issuance must be "agreeable to the usages and principles of law") (quoting 28 U.S.C. § 1651(a))); *Bordelon Marine, LLC v. Bibby Subsea ROV, LLC*, CIVIL ACTION No. 16-1106, 2017 WL 396188, at *3–4 (E.D.

La. Jan. 30, 2017) (stating that a party seeking relief under the All Writs Act must satisfy three elements: (1) there must be "no other adequate means to attain the relief" that is sought, (2) a party's right to issuance of the writ must be "clear and indisputable," and (3) the order must be "appropriate under the circumstances").

As courts have explained, the power to issue writs under the All Writs Act is limited to situations where the court must act to protect its own jurisdiction. *See, e.g.*, *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008) (explaining that to "counter such threat and to protect its jurisdiction, the district courts are authorized by the All Writs Act . . . to restrict access to vexatious and abusive litigants"); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 n.12 (11th Cir. 2004) (distinguishing injunctions under the All Writs Act from "traditional injunctions, predicated upon causes of action rather than threats to a court's jurisdiction"). MVP's conduct in the use of its easements, obnoxious though it may be to Vest (and other landowners), does not present a threat to the court's jurisdiction. *See, e.g.*, *In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1341 (S.D. Fla. 2002) ("Under the All Writs Act, an injunction requires 'a threat . . . to the jurisdiction of the court,' not just 'to the plaintiff's continuing interest in prosecuting his lawsuit . . . .'" (quoting *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1213 (D.C. Cir. 1989))); *see also* Dimitri D. Portnoi, *Resorting to Extraordinary Writs: How the All Writs Act Rises to Fill the Gaps in the Rights of Enemy Combatants*, 83 N.Y.U. L. Rev. 293 (Apr. 2008) (discussing *Klay*, and noting that the "key difference between an [All Writs Act] injunction and a traditional injunction is the purpose for which it is issued. A traditional injunction issues to protect an individual; an [All Writs Act] injunction issues to protect the integrity of court orders or proceedings").

In this respect, Vest's motions for the court to order MVP to stop work and to provide advance notice of MVP's work schedule are essentially requests for injunctive relief that, if granted,

would affect Vest's personal rights as a property owner, as well as MVP's rights, granted by FERC and approved by this court, to use the easement. The All Writs Act "invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999); *see also Klay*, 376 F.3d at 1100. Rule 65 of the Federal Rules of Civil Procedure exists as an adequate avenue to obtain the remedy of a traditional injunction. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) (noting that "where the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies exist, namely Fed. R. Civ. P. 65, which provides for temporary restraining orders and preliminary injunctions"); *Klay*, 376 F.3d at 1100 ("The requirements for a traditional inunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."). Vest has not attempted to satisfy the requirements of a traditional preliminary injunction or temporary restraining order under Rule 65, including the requirement of offering security to cover damages to MVP. *See Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (explaining that the movant must establish likelihood of success on the merits, irreparable harm, and the balance of equities the public interest favor the movant); Fed. R. Civ. P. 65(c)(requiring security). Vest's complaints and issues with MVP construction also could have been raised in the FERC proceeding.

Additionally, the court has had the opportunity on several occasions to explain the limits of its authority and jurisdiction in MVP's condemnation proceedings. Pursuant to the National Gas Act, the court has jurisdiction to hear cases by certificate holders to condemn property for approved routes, 15 U.S.C. § 717(h), and to enforce FERC's orders, 15 U.S.C. § 717u. The court does not, as requested by Vest, have jurisdiction to revise or modify those orders. Neither can the court's

jurisdiction be expanded by the All Writs Act. *See, e.g.*, *Clinton*, 526 U.S. at 534–35 (explaining that the All Writs Act authorizes extraordinary writs in aid of the issuing court's jurisdiction but "does not enlarge that jurisdiction"); *United States v. Tablie*, 166 F.3d 505, 506–07 (2d Cir. 1999) (stating that the All Writs Act "does not confer an independent basis of jurisdiction," as it is "'well established that the [All Writs Act] does not expand a court's jurisdiction'") (quoting *Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998))).

For example, in its opinion addressing MVP's motions for partial summary judgment and for a preliminary injunction seeking immediate possession of the properties, the court stated:

> In addition to the process for review of a FERC order, a separate provision of the NGA expressly grants district courts authority to decide a condemnation proceeding like this one. 15 U.S.C. § 717f(h). The role of courts in such proceedings is circumscribed, however. *Millennium Pipeline Co. v. Certain Permanent & Temp. Easements*, 777 F. Supp. 2d 475, 481 (W.D.N.Y. 2011), *aff'd*, 552 F. App'x 37 (2d Cir. 2014). That is, "[t]he NGA does not allow landowners to collaterally attack the FERC certificate in the district court, it only allows enforcement of its provisions." *Transwestern Pipeline Co. v. 17.19 Acres*, 550 F.3d 770, 778 n.9 (9th Cir. 2008); *see also Columbia Gas Transmission, LLC v. 252.071 Acres More or Less*, No. 15-cv-3462, 2016 WL 1248670, at *5 (D. Md. Mar. 25, 2016) ("The jurisdiction of this court is limited to evaluating the scope of the FERC Certificate and ordering condemnation as authorized by that Certificate . . . . This court's role is mere enforcement." (quoting *Guardian Pipeline, L.L.C. v. 529.42 Acres*, 210 F. Supp. 2d 971, 974 (N.D. Ill. 2002))).

*MVP v. Easements*, Civil Action No. 7:17-cv-00492, 2018 WL 648376, at *3 (W.D. Va. Jan. 31, 2018). Prior to the issuance of the certificate, FERC considered MVP's proposal for three years. Once issued, MVP only has the authority to condemn the FERC-approved route. Even if MVP could reach agreement with a particular landowner, MVP and the landowner would have to jointly seek approval from FERC for route variation. Put simply, the court has already approved the easements because they align with the FERC-approved routed. The court lacks jurisdiction to alter

7

the route.

The court has also noted, as relevant here, an argument by a landowner that the "Certificate Order itself references assurances by MVP that it 'will make good faith efforts to negotiate with landowners for any needed rights, and will resort only when necessary to the use of eminent domain.' (citing FERC Cert. Order ¶ 57)." *MVP*, 2018 WL 648376, at *9 n.11. The court rejected this argument in the absence of "authority suggesting MVP has an obligation to negotiate in good faith, however, or that its assurances to FERC somehow translate into an added statutory requirement to do so. Compliance with any condition in the certificate is an issue for FERC, not this court." *Id.*

And in a separate order, the court once again emphasized its "limited role of ordering condemnation as authorized by the FERC certificate"—

> Furthermore—and more importantly for purposes of this proceeding—the court's description of a witness's testimony about when tree felling could and could not occur pursuant to various guidelines is not the equivalent of a command or a directive to MVP about when it could or could not fell trees. Those determinations are made by FERC, based on its interpretation of MVP's compliance with the FERC certificate and its subsequent instructions. As the court referenced repeatedly in that same opinion, in National Gas Act condemnation cases like this, the court has a limited role of ordering condemnation as authorized by the FERC certificate. Because the Terrys have not shown clearly and convincingly that MVP violated an *order* of this court, they have failed to establish the third element of their contempt claim.

*MVP v. Easements*, Civil Action No. 7:17-cv-00492, 2018 WL 2088762, at *5 (W.D. Va. May 4, 2018) (emphasis in original). Just as this court lacks authority or jurisdiction to manage MVP's tree-felling activities, the court also lacks jurisdiction to halt work or to impose other conditions, such as time and place restrictions, on MVP's construction activities. The court has no authority to take such action under the All Writs Act or the Natural Gas Act.

Finally, Vest argues that MVP's failure to provide notice, time, and scope of work

8

information interferes with his and his family's right to fully use and enjoy their property. (*See* Dkt. No. 598, Case No. 7:17-cv-00492 (providing that landowners "may fully use and enjoy the premises to the extent that such use and enjoyment does not interfere with or obstruct MVP's rights described herein").) As noted above, imposing such requirements on MVP interferes with its rights as granted by FERC and this court. More importantly, the court lacks authority to intervene and micromanage the ongoing construction project.

Because of the court's limited authority under the All Writs Act and the Natural Gas Act, the court declines Vest's request to interfere with MVP's construction activities.

### III.  CONCLUSION

For these reasons, Vest's motion to supplement the record (Dkt. No. 64) is GRANTED, Vest's emergency motion to prevent or restrict temporary road access (Dkt. No. 59) is DENIED, and Vest's motion to stop work (Dkt. No. 60) is DENIED as moot.

Entered: March 29, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge